ROSE QUINN v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

March 1, 1907.

Nos. 15,044—(122).

**Negligence—Unsecured Cars at Top of Grade.**

The evidence is not sufficient to sustain the claim, as alleged in the complaint, that respondent company was guilty of negligence in leaving certain cars unsecured upon a "hill" switch track, because of which they ran back down the grade, colliding with cars on the "lead" track during subsequent switching operations.

Action in the district court for Hennepin county by plaintiff, as administratrix of the estate of John Quinn, deceased, to recover $5,000 for the death of her intestate.   The case was tried before Simpson, J., who, upon the conclusion of plaintiff's testimony, granted defendant's motion to dismiss the action.   From an order denying a motion for a new trial, plaintiff appealed.   Affirmed.

*W. E. Dodge* and *E. L. Sutton,* for appellant.

*John I. Dille* and *George W. Seevers,* for respondent.

LEWIS, J.

The act of negligence upon which appellant claims the right to recovery is specifically set out in the complaint as follows:   Respondent company maintained a railroad yard in the city of Minneapolis for the purpose of handling and operating freight cars and trains.

[1] Reported in 110 N. W. 872.

One track was known as the "lead track," which was connected by means of switches with several storage or spur tracks, one of which, No. 9, was a gravity track, with a heavy grade from its connection with the lead track at the switch to the other extremity, for which reason it was necessary, for the safety and protection of the employees working in the yard and for the company's property, that all freight cars placed and stored on track No. 9 should be firmly coupled, the brakes firmly set, and a block placed under the wheels, to prevent the cars from starting and moving down the grade toward the lead track. It is alleged that the rules, regulations, and directions of respondent required that all cars stored on track No. 9 should be secured in this manner; that appellant's intestate, John Quinn, was engaged as a foreman of respondent's night switching crew, consisting of an engineer, fireman, and several assistant switchmen; that about daylight on the morning of December 11, 1903, as switch foreman, Quinn was required to place certain cars on different tracks in the yard connecting with the lead track, including track No. 9; that prior thereto respondent company had placed on track No. 9 a string of freight cars, and through its servants, other than Quinn and his crew, had negligently placed and left them on track No. 9 without coupling the same, setting the brakes, or blocking any of the wheels, so as to prevent their starting and moving down the grade toward the lead track; that thereafter on the same day respondent required and directed Quinn to back other cars upon the lead track in a westerly direction, whereupon Quinn signaled the engineer of his crew to back up the engine for the purpose of putting cars on other tracks connected with the lead track, whereby it became necessary for the cars to pass over the switch situated at the intersection of track No. 9; that by reason of respondent's negligence in so placing and leaving such cars on track No. 9, without securing them in the manner aforesaid, without the knowledge of Quinn, and without fault on his part, such cars, or a number of them, started down the grade and came in contact with a car on the lead track on which Quinn, in the performance of his duties, was riding, causing it to be upset and resulting in his death. There are other allegations in the complaint to the effect that the engineer, while operating the cars on the lead track, did so negligently and carelessly, and failed to obey the signals given by Quinn, as the

result of which the car was driven along with unusual violence, and so coming in contact with the cars running back on the grade track; but at the trial appellant specifically waived all claims for damages by reason of any act on the part of the switching crew of which the deceased was a member, and that feature of the complaint dropped out of the case.

At the close of appellant's case respondent moved the court to dismiss the action upon several grounds, among others, that the evidence failed to make out any case of negligence against respondent company. The motion was granted, and the action dismissed.

The specific act of negligence set out in the complaint, and which appellant undertook to sustain by the evidence, was that on the day in question John Quinn, as foreman of the switching crew, found it necessary in the performance of his duties to switch cars from the lead track to the different side tracks, and that he had a right to assume that the string of cars which occupied a portion of track No. 9 were properly secured by the setting of brakes, the coupling of cars, or the placing of blocks underneath the wheels, so as to prevent them from running down the grade onto the lead track while such operations were being conducted. From such a state of facts it is not difficult to see that if for any cause, during the operations along the lead track, the cars previously located on track No. 9 should be disturbed from any cause and start down the grade, very serious results might happen at the point of contact with other cars on the lead track. To maintain this claim appellant called as witnesses a switchman, Woodford, George Quinn, an assistant switchman, brother of the deceased, the engineer, and a civil engineer, who examined and made some measurements to determine the grade of the track in question. Woodford testified that it was the custom in the yard, when cars were set in on track No. 9, to couple them or set the brakes, in order to hold them from running down to the lead track, and, when asked what work it was that he performed on track No. 9, he answered:

> Shoved track 9 back to hold two cars. Q. What do you mean by shoving the track? A. The cars were left down just so they cleared the lead, and there was an opening in on track 9 of about four cars length on the rear end of 9, and we had to

shove those cars back there on the rear end of 9 to make room for these two.

The witness then testified that the opening in the string of cars on track No. 9 was back from the lead track five or six car lengths.

Q. Did Mr. John Quinn, the foreman, then give any instructions to the men? A. He told me to set up No. 10 back to the limit near Fifth street, and as I was coming back over the top alone he hollered up—called me by name, and wanted to know if there was any room on track 9, and I went back and told him, " Yes, " that track 9 would hold about four cars at the rear end, and he says, " Take 9 back to the limit. " I jumped across the cars over from 10 onto track 9, and gave them the signal to shove the cars back. They shoved in about two cars when they cut off the cars and went back out on the lead. * * * Q. So when the engine pulled out onto the lead track it backed out? A. Yes, sir. Q. And then what was done? A. He said he would take the rest of the cars and put them up on 13.

This witness testified that he did not set any brakes himself, and did not examine to see whether the cars were blocked, but that after the cars were taken out, after the accident, he saw a small block lying on the rail, about an inch or inch and a half long and two inches wide, and all flattened out, and that at that time, after the accident, none of the brakes were set. On cross-examination this witness repeated that Foreman Quinn had said, "We will send them back to the limit," and told them to crowd the cars eastward on No. 9 until he could get his cars in that he wanted to set in there. Again, on redirect examination, he stated that the space between the west end of the cars on track No. 9 and the lead switch would hold about one car. The same statement was reiterated on recross-examination, and later, on recross-examination, the witness stated that, after the two cars had been shoved in, the space between the two strings of cars on track No. 9 was only about half a car.

The assistant switchman, George Quinn, testified that he rode one of the two cars in on track No. 9 and coupled them up with the cars

already there, and that, when the car he was riding went against the. other cars on track No. 9, they moved along the track, from which fact he knew the brakes on those cars were not set. The engineer testified that Foreman Quinn gave him the signal to go in on track No. 9 with two cars, and that the assistant switchman, George Quinn, rode them in with the brakeman and left the two cars in the clear of the lead track.

This witness also testified that there was a sag in track No. 9, commencing at a point about twenty to forty feet from the switch, and running back about two cars. The civil engineer testified that the steepest point in the grade of track No. 9 was between two hundred ninety five and three hundred thirty seven feet from the switch, and stated that he took his measurements every fifty feet from the switch, but did not take any intermediate measurements, and that the track was not uniform; some points being higher than others.

From the foregoing it appears that the easterly string of cars, consisting of fifteen or more, standing toward the easterly end of track No. 9, was not disturbed in the operations referred to; that the string of five cars on the westerly end on track No. 9 stood so close to the lead track that they had to be pushed to the east in order to make room for the two cars which Quinn proposed to set in; and the west end of the westerly string was within a car length of the switch. Conceding that no brake was set on either of those five cars, there is no evidence to indicate that they were not properly secured, and would have moved out of position, unless disturbed by the switching operations of the crew as stated. It is evident they were held in position, either by a block under the wheels, or by the natural condition of the track at that point. Negligence should not be presumed on the part of the previous switching crew, and, in the absence of evidence to the contrary, it should be assumed that there was no necessity for setting brakes to hold the cars in position. The trial court was correct in holding there was no evidence to sustain the charge of negligence as alleged.

Order affirmed.